**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THE FILTA GROUP, INC.,**

**Plaintiff,**

**v.** **Case No: 6:25-cv-914-PGB-NWH**

**LXU, LTD., KENNETH MELICK, KITCHEN KARE INNOVATIONS, LLC and SHANE FARRER,**

**Defendants.**

___________________________/

**OMNIBUS ORDER**

This cause comes before the Court on the following:

1. Defendants LXU, Ltd., Kenneth Melick, Kitchen Kare Innovations, LLC, and Shane Farrer's (collectively, the "**Defendants**") Motion to Dismiss for Lack of Personal Jurisdiction, and in the Alternative, Transfer Venue (Doc. 72 (the "**Motion to Dismiss**")) and Plaintiff The Filta Group, Inc.'s ("**Plaintiff**") response in opposition (Doc. 74 (the "**Response**")); and

2. Plaintiff's Motion for Summary Judgment (Doc. 172), Defendants' Response in Opposition (Doc. 183), and Plaintiff's Reply (Doc. 184). The parties also filed a joint stipulation of agreed material facts. (Doc. 171).

Upon consideration, the Motion to Dismiss is due to be denied, the Motion to Transfer Venue is due to be denied, and the Motion for Summary Judgment is due to be denied without prejudice.

## I. BACKGROUND[1]

Franchisor Plaintiff brings this action for injunctive relief and damages against Ken Melick ("**Melick**") (a former franchisee) and his company LXU, LTD ("**LXU**")[2], and Shane Farrer ("**Farrer**") (a co-conspirator) and his company Kitchen Kare Innovations, LLC ("**KKI**").

On January 9, 2014, Defendants Melick and LXU executed a franchise agreement with Plaintiff. (*See generally* Doc. 1-1 (the "**Agreement**")). Plaintiff is incorporated under the laws of the State of Delaware, and its principal place of business is in Orlando, Florida. (*Id.* at p. 5). Defendants Melick and Farrer are domiciled in the State of Ohio, and LXU and KKI are both Ohio corporations. (Doc. 1, ¶¶ 7, 10). The Agreement contains a forum selection clause, which provides that "[Mr. Melick and LXU] must file any suit against [Plaintiff], and [Plaintiff] may file any suit against [Mr. Melick and LXU], in the federal or state court where [Plaintiff's] principal office is located at the time the suit is filed. The parties waive all questions of personal jurisdiction and venue for the purpose of carrying out this provision." (Doc. 1-1, p. 40). Moreover, the Agreement contained

[1] The Court will not rehash the detailed factual record, which is available in the Court's Order granting Plaintiff's Motion for Preliminary Injunction. (*See* Doc. 116). The Court fully adopts and incorporates those factual findings as if fully set forth herein. (*Id.*).

[2] Collectively, the Court will refer to Defendants Melick and LXU as the "Franchisees".

a choice-of-law provision, which provides that "[t]his Agreement is governed in all respects in accordance with the law of the State of Florida, without regard to the application of Florida conflict of law rules." (*Id.*). Finally, to protect its proprietary information, franchisees were required to obtain signed confidentiality and/or non-compete agreements from their employees. (*Id.* at p. 27).

Defendant Farrer formed KKI on October 1, 2024. (Doc. 116, p. 3). Before founding KKI, Defendant Farrer was employed by LXU, where he began as a technician and eventually rose to the position of Chief Operating Officer. (*Id.*). Defendants Farrer and Melick maintain offices at the same physical address. (*Id.*). Defendant Farrer attended conventions while employed by LXU and gained knowledge of fryer management during his eight-year tenure. (*Id.*). Defendant Farrer also learned which customers LXU serviced under Plaintiff's franchise and the amounts charged for those services. (*Id.*). Defendant Melick never asked Defendant Farrer to sign a confidentiality agreement. (*Id.* at p. 4).

Ultimately, the Defendants conspired together to circumvent the Agreement and utilize Plaintiff's customer lists, equipment, and business in the states of Ohio, Indiana, and Kentucky. (*Id.* at pp. 4–8). In response to these actions, Plaintiff initiated this lawsuit.

On June 30, 2025, Plaintiff filed a Renewed Motion for Preliminary Injunction. (Doc. 29). On October 16, 2025, Defendants filed a motion to dismiss for lack of personal jurisdiction, and in the alternative, to change venue. (Doc. 72).

On December 17 and 18, 2025, this Court held a two-day-long evidentiary hearing on Plaintiff's Renewed Motion for Preliminary Injunction. (Docs. 130, 131). At that hearing, the Court made various factual determinations as to the merits of this case based upon Defendants Melick and Farrer's testimony under oath. (*See* Docs. 116, 130, 131). Importantly, the Defendants testified as to factual issues relevant for the issue of personal jurisdiction. (*See* Doc. 116). Thereafter, the Court granted the Renewed Motion for Preliminary Injunction. (*Id.*). Importantly, this Court determined that a conspiracy existed between the Defendants to infringe on Plaintiff's trademarks and to violate restrictive covenants entered into by Defendants Melick and LXU in their Agreement with Plaintiff. (*Id.*).

On April 4, 2026, Plaintiff filed its Motion for Summary Judgment alongside the Stipulation of Agreed Material Facts. (Docs. 171, 172). Defendants responded in opposition, and Plaintiff later replied. (Docs. 183, 184).

These matters are now ripe for review.

## II. STANDARD OF REVIEW

### A. Personal Jurisdiction

District courts in the Eleventh Circuit apply a two-prong test to determine whether personal jurisdiction exists over a defendant. *Mutual Serv. Ins. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). Ordinarily, the court must first determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *See Future Tech. Today, Inc.*

*v. OSF Healthcare Sys.*, 218 F.3d 1247, 1248 (11th Cir. 2000). If jurisdiction is established under the forum state's long-arm statute, the court must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must allege facts sufficient to establish that the court has personal jurisdiction over the defendant and to rebut a defendant's assertion that jurisdiction over him is improper. *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1313 (M.D. Fla. 2010) (citing *Future Tech. Today, Inc.*, 218 F.3d at 1249). Ordinarily, in the face of conflicting evidence at the motion to dismiss stage, "reasonable inferences are drawn in the plaintiff's favor." *See 3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1036 (M.D. Fla. 2019). However, the court may also "wait to impose a preponderance . . . standard until trial" and simply "review[] the motion to dismiss under a *prima facie* standard." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021). Under the *prima facie* standard, "[t]he plaintiff meets its burden if it presents enough evidence to withstand a motion for judgment as a matter of law." *Id.*[3] "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th

[3] Judgment as a matter of law "largely 'mirrors' the summary-judgment standard." *Dupree v. Younger*, 143 S. Ct. 1382, 1387 (2023).

Cir. 2002). By going this route, the court is "implicitly, if not explicitly, ordering 'that hearing and determination [of the motion to dismiss] be deferred until the trial.'" *AcryliCon*, 985 F.3d at 1365 (first quoting *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 676 (1st Cir. 1992); and then quoting FED. R. CIV. P. 12(d)).

**B. Venue**

A motion to transfer venue within the federal court system is governed by 28 U.S.C. § 1404(a). *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 57–58 (2013). Under § 1404(a), a district court may transfer a civil action "[f]or the convenience of the parties and witnesses, [and] in the interest of justice . . . to any district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

When applying this statute, courts undertake a two-step analysis. *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1241 (M.D. Fla. 2016) (citations omitted). First, the court must determine "whether the case could have been filed in the proposed district." *Id.* Second, the court must assess "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Id.* (quoting *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000)). In analyzing the second prong, courts in the Eleventh Circuit traditionally consider the following factors:

> 1) the convenience of the witnesses; 2) the location of relevant documents and the ease of access to sources of proof; 3) the convenience of the parties; 4) the locus of operative facts; 5) the availability of process to compel unwilling witnesses; 6) the relative means of the parties; 7) a forum's familiarity with the governing law; 8) the weight

> accorded a plaintiff's choice of forum; and 9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).

A court will not disturb a plaintiff's choice of venue unless the movant can demonstrate that the choice is outweighed by other considerations. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Therefore, the movant carries the burden of establishing that the case should be transferred to the suggested venue in the interest of convenience and justice. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Ultimately, the decision to transfer a matter is within the sound discretion of the district court. *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982).

### C. Summary Judgment

To prevail on a motion for summary judgment under Federal Rule of Civil Procedure 56, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted)).

The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the [nonmoving] party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne*, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

Importantly, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis omitted). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* (internal quotations omitted). "Such a motion, whether or not accompanied by affidavits, will be made and supported as provided in this rule, and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted).

## III. DISCUSSION

Before the Court are Motions to Dismiss, to Transfer Venue, and for Summary Judgment. The Court will address each in turn.

### A. Motion to Dismiss for Lack of Personal Jurisdiction

#### *1. Burden of Proof*

"[I]f 'a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss,' Federal Rule of Civil Procedure 12(i) affords the district court 'discretion on how to proceed.'" *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (quoting *AcryliCon*, 985 F.3d at 1364). "The district court has two options: (1) hold an evidentiary hearing before trial to make factual findings about personal jurisdiction or (2) decide the motion to dismiss 'under a prima facie standard' without an evidentiary hearing." *Id.* (first citing *AcryliCon*, 985 F.3d at 1364–65; and then citing FED. R. CIV. P. 12(i)). If the court "holds an evidentiary hearing, then it should impose the preponderance-of-the-evidence standard right away and find the relevant jurisdictional facts during the pretrial phase." *Id.* (quotations omitted).

In this case, because the Court held a two-day-long evidentiary hearing, where the Defendants testified under oath as to facts relevant for the issue of personal jurisdiction, the preponderance of the evidence standard is appropriate. As discussed at the evidentiary hearing,[4] the merits of this case are deeply

4 *See supra* Section I.

connected to the jurisdictional issues themselves. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 733 (11th Cir. 1982) ("Where the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other."). Therefore, following an extensive multi-day evidentiary hearing, the Court will not apply the *prima facie* standard and blind itself to the plethora of evidence accumulated in this case.

### ***2. Florida Long-Arm Statute***

Florida's long-arm statute permits Florida state courts, as well as federal district courts, to exercise two categories of personal jurisdiction over nonresident defendants: general and specific. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); FLA. STAT. § 48.193. General jurisdiction exists where a defendant engages in "substantial and not isolated activity" within the state. FLA. STAT. § 48.193(2). Specific jurisdiction, on the other hand, "is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint." *Stubbs*, 447 F.3d at 1360, n.3. "Since the extent of the long-arm statute is governed by Florida law, federal courts are required to

construe it as would the Florida Supreme Court."[5] *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).

*i. The Franchisees (Melick & LXU)*

Defendants first argue that neither Melick, an Ohio resident, nor LXU, an Ohio corporation, is subject to general jurisdiction in Florida. (Doc. 72, pp. 7–10). The Court agrees.

While the Franchisees concede that they have some business-related contacts with Florida, Defendants assert that these contacts are not "so continuous and systematic as to render them essentially at home in" Florida. (*Id.*); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotations omitted). Plaintiff responds that the Franchisees regularly travel to Florida, exchanged thousands of calls and emails with Plaintiff there, and purchased equipment from Plaintiff in the state. (Doc. 74, pp. 10–11). Plaintiff relies on two cases to argue that these contacts establish general jurisdiction. First, Plaintiff cites *Burger King Corp. v. Rudzewicz* for the proposition that "general jurisdiction [confers] where [a] non-resident enter[s an] agreement with [a] franchisor involving continuing contacts with Florida." (*Id.* at p. 11 (citing and

---

5 Florida's general jurisdiction provision, however, is ***coextensive*** with the limits of due process under the United States Constitution. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (explaining that the reach of FLA. STAT. § 48.193(2) "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." (quotation omitted)). Because the statute reaches no further than the Constitution permits, the two inquiries collapse into one. Importantly, the delta between the constitutional ceiling provided by the United States Constitution and whatever, if any, additional reach Florida's statutory provision purports to claim above it is immaterial. That excess general jurisdiction cannot be exercised by any federal court.

then I would put the case cite for Rudzewicz here)). However, Plaintiff misreads *Rudzewicz*, which held that Florida could constitutionally exercise *specific jurisdiction* over a Michigan-domiciled franchisee. 471 U.S. 462, 487 (1985) (holding that "District Court's exercise of jurisdiction pursuant to FLA. STAT. § 48.193(1)(g)[6] did not offend due process"). Thus, *Rudzewicz* is not instructive for general jurisdiction analysis. Next, Plaintiff cites *HSC Organics LLC v. Bymaster* for the proposition that "general jurisdiction [tracks] where . . . [out-of-state] defendant regularly communicated by phone and e-mail with plaintiff in Florida, defendant purchased and received products from Florida, and defendant attended company events in Florida." (Doc. 74, p. 11 (citing No. 8:21-CV-1852-WFJ-CPT, 2022 WL 3598295, at *6 (M.D. Fla. Aug. 23, 2022)). However, the undersigned respectfully disagrees with the framing of the general jurisdiction question in *Bymaster*. General jurisdiction does not turn on tallying a defendant's contacts with the forum state and asking whether they cross some indeterminate threshold. Rather, the general jurisdiction inquiry is narrow and categorical: whether the defendant's affiliations with the forum state are so continuous and systemic as to essentially render the defendant at home there. "[A] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a

---

6 At the time of the *Rudzewicz* decision, the operative version of FLA. STAT. § 48.193(1)(g) provided specific jurisdiction over those who "[b]reached a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." The Supreme Court specifically contrasted its discussion of specific jurisdiction with the concept of general jurisdiction. 471 U.S. at 473 n.15.

corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear* , 564 U.S. at 924 ).[7]

Here, LXU is incorporated under the laws of the State of Ohio and has its principal place of business in Canal Winchester, Ohio. (Doc. 1, ¶ 7). LXU is not a Florida corporation and thus is not subject to general jurisdiction in Florida. Next, while Mr. Melick has substantial business ties to the state of Florida, such business connections do not establish general jurisdiction. Mr. Melick is a domiciliary of the State of Ohio, and neither Plaintiff's allegations nor the testimony elucidated at the evidentiary hearing undermine that assertion. While Mr. Melick himself testified to his many other connections to Florida, there has been no indication that his contacts are so pervasive as to make Florida his *home*. Accordingly, the Court cannot exercise general jurisdiction over the Franchisees.

Next, Plaintiff argues that specific personal jurisdiction tracks to the Franchisees through FLA. STAT. § 48.193(1)(a)(2), which confers specific jurisdiction over a defendant who commits "a tortious act within" Florida. Plaintiff asserts that this provision "applies to defendants committing tortious

---

[7] It is possible to assert general personal jurisdiction against a nonresident incorporated entity in "exceptional cases." *Daimler*, 571 U.S. at 139 n.19. Plaintiff does not argue that this case presents those exceptional circumstances. Moreover, whether the "exceptional circumstances" principle has any applicability to nonresident individual defendants remains essentially untested, and unargued in this case.

acts outside the state that cause injury in Florida." (Doc. 74, p. 12 (quoting *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 955 (11th Cir. 2010))[8]. The tortious acts, as Plaintiff claims, are the alleged violations of the "Lanham Act, and other infringement-based claims in counts I-IV . . . [.]" (*Id.*). In response, Defendant argues that "the plaintiff must demonstrate that the nonresident defendant committed a substantial aspect of the alleged tort in Florida . . . [and] the alleged tort must cause injury in the state of Florida." (Doc. 72, p. 13 (quoting *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1329 (S.D. Fla. 2001)).

Indeed, "the Florida long-arm statute permits jurisdiction over [a] nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). If that injury is trademark infringement, "the Florida long-arm statute is satisfied if the alleged trademark infringement . . . caused injury in Florida." *Id.* And here, Defendant Melick, acting on behalf of LXU, admitted to infringing upon Plaintiff's trademarks, which caused injury to Plaintiff in Florida.[9] District courts have

---

8 "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

9 **Q:** "When you entered your franchise agreement with [Plaintiff], you understood that your ability to use the trademarks would be limited, right?" **A:** "Correct." **Q:** "You could only use them during the time you were a [Plaintiff] franchisee, correct?" **A:** "Right" **Q:** "Your right to use those trademarks would terminate immediately upon the termination of your franchise agreement, right?" **A:** "That's correct." **Q:** "So you're still using [Plaintiff's] trademarks after you terminated the franchise agreement, right, sir?" **A:** "Right." (Doc. 131, 160:18–24, 161:3–6, 162:17–19).

widely held that injury due to trademark infringement occurs in the state where the trademark owner resides. *Mach. Mounting Sols., Inc. v. Am. VULKAN Corp.*, No. 8:25-CV-2672-WFJ-TGW, 2026 WL 693208, at *6 (M.D. Fla. Mar. 12, 2026); *Xymogen, Inc. v. Digitalev, LLC*, No. 6:17-CV-869-ORL-31-KRS, 2018 WL 659723, at *2 (M.D. Fla. Feb. 1, 2018); *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1271 (M.D. Fla. 2015). In any event, because the Franchisees used the marks on "a generally available website" accessible in Florida, a substantial part of the tortious act occurred in Florida. (Doc. 72, p. 14); *see Lovelady*, 544 F.3d at 1283. Accordingly, specific personal jurisdiction over the Franchisees tracks from FLA. STAT. § 48.193(1)(a)(2).

Similarly, jurisdiction tracks from FLA. STAT. § 48.193(1)(a)(7), which extends jurisdiction over claims involving the "[b]reaching [of] a contract in this state by failing to perform acts required by the contract to be performed in this state." Here, because the Franchisees breached the Agreement with Plaintiff, who is in Florida, jurisdiction is proper. (Doc. 166, p. 10 n.6); *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1378 (S.D. Fla. 2005) (exercise of personal jurisdiction proper over nonresident defendant whose breach was suffered in Florida); *Vacation Ventures, Inc. v. Holiday Promotions, Inc.*, 687 So. 2d 286, 289 (Fla. 5th DCA 1997).

*ii. The Non-Franchisees (Farrer & KKI)*

Plaintiff next argues that general jurisdiction tracks for Defendant Farrer. (Doc. 74, p. 10 n.11). Citing *Simple Signman Sys., Inc. v. Hershkop*, Plaintiff asserts that "[this] court may assert general jurisdiction over [Farrer] based on [Farrer's] activities as an employee on behalf of a corporation." (*Id.* (quoting No. 3:15-CV-00178-J-20-MCR, 2015 WL 12830470, at *9 (M.D. Fla. July 10, 2015))). The crux of this argument is that, because Defendant Farrer was an employee of the Franchisees, he would be subject to general jurisdiction in Florida. (*Id.*). However, because the Court has already determined that the Franchisees are not subject to general jurisdiction in Florida, this argument does not track. Defendant Farrer is a domiciliary of Ohio, and there has been no evidence presented to suggest his connections to Florida are so extensive as to make Florida his home.

Even so, while not subject to general jurisdiction in Florida, the Non-Franchisees are subject to specific personal jurisdiction under Florida's Long-Arm Statute. This Court, along with many others, has long held that if "any member of a conspiracy committed tortious acts in Florida in furtherance of the conspiracy, then all of the conspirators are subject to personal jurisdiction in Florida." *Adventist Health Sys. Sunbelt Healthcare Corp. v. Weiss*, No. 6:20-CV-877-ORL-40-DCI, 2021 WL 1238321, at *8 (M.D. Fla. Feb. 22, 2021); *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1330 (S.D. Fla. 2010) ("If an individual successfully alleges that any member of a conspiracy committed tortious acts in Florida in furtherance of the conspiracy, then all of the conspirators are subject to personal jurisdiction in Florida"). Here, the Court has already determined that the Non-

Franchisees participated in a conspiracy to defraud Plaintiff of its customers, equipment, trademark, and reputation. (Doc. 116, pp. 4–8). The Non-Franchisees assisted the Franchisees' effort to undermine the agreement with Plaintiff. (*Id.* at p. 7). In fact, in a colloquy with defense counsel, the Court asked "would you agree if I conclude that these gentlemen worked together jurisdiction tracks? Right?" Defense counsel answered "[a]rguably, yes, Your Honor." (Doc. 131, 35:14–17). Accordingly, because the Court already found that the Non-Franchisees conspired with the Franchisees to violate Plaintiff's trademarks, breach the contract with Plaintiff and unfairly compete, the Non-Franchisees are subject to personal jurisdiction in Florida pursuant to §§ 48.193(1)(a)(2); 48.193(1)(a)(7).

### *3. Due Process*

To comport with the Due Process Clause of the Fourteenth Amendment, the Court must ensure that the claims at bar arise out of or relate to the Defendants' "minimum contacts" with Florida "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (*quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)); *see also* U.S. CONST. amend. XIV, § 1. Because personal jurisdiction over each Defendant rests upon the exercise of specific jurisdiction, the Court must apply a three-part test for minimum contacts which examines: (1) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's

laws (the "**Purposeful Availment Prong**"); (2) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum (the "**Relatedness Prong**"); and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice (the "**Fair Play Prong**"). *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations and internal quotations omitted).

*i. Purposeful Availment Prong*

To exercise specific personal jurisdiction over nonresident defendants, the defendants must have purposefully availed themselves of the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 254 (1958). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Rudzewicz*, 471 U.S. at 475 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)).

*a. The Franchisees' contacts with Florida*

The Franchisees' contacts with Florida are straightforward. Franchisees agreed to a valid contract with a Florida business, where they utilized equipment owned by a Florida entity, and deployed marks registered in Florida to solicit business. (Doc. 74-1). Defendant Melick frequently traveled to Florida for Plaintiff-sponsored trainings, on behalf of LXU, and communicated with Plaintiff in Florida via email and phone thousands of times. (*Id.* at p. 5). Moreover, the record establishes that Defendant LXU's revenue from Plaintiff's national accounts was rather than the franchisee. As the Agreement makes clear, "[u]nless

otherwise directed by [Plaintiff], all billing and collection for services performed under a National Account Contract will be done by [Plaintiff]". (Doc. 1-1, p. 24; Doc. 132, 38:9–39:1–14). The Agreement also barred the Franchisees from contacting the corporate headquarters of any national account customer listed on Plaintiff's internal network absent Plaintiff's express consent. (Doc. 1-1, p. 21). Defendant Melick described the resulting arrangement: the Franchisees performed the work and invoiced the customer, "[t]he customer pays [Plaintiff, Plaintiff] removes their fees from it [,] and then sends that to the franchisee" on a weekly cycle. (Doc. 132, 227:12–13). Defendant Melick valued that weekly remittance at approximately $70,000 to $80,000, received directly from Florida accounts. (*Id.* at 227:21).

As a result of these voluminous contacts with Florida, Franchisees could have "reasonably anticipate[ed] being haled into court" here. *Calder v. Jones*, 465 U.S. 783, 790 (1984). That Franchisees have been called to litigate in Florida is not "random, fortuitous, or attenuated", rather, "the contacts proximately result from actions by the" Franchisees themselves "that create a substantial connection with the forum state. *Rudzewicz*, 471 U.S. at 475 (1985) (quotations omitted). Accordingly, Plaintiff has satisfied the Purposeful Availment Prong for Franchisees.

*b. The Non-Franchisees' contacts with Florida*

Defendant Farrer also shares several contacts with Florida. Defendant Farrer was an employee of LXU, serving as its Chief Operating Officer. (Doc. 74-

1, p. 4). As part of his responsibilities, Defendant Farrer attended trainings and conferences in Florida, sponsored by Plaintiff. (*Id.*; Doc. 130, 9:6–8). Defendant Farrer had access to Plaintiff's confidential information, presumably stored on computer servers located in Florida, and regularly communicated with Plaintiff in Florida. (Doc. 74-1, p. 4; Doc. 130, 126:2–20). Moreover, as part of the conspiracy to circumvent the contract, Defendant Farrer knew that his actions would assist the Franchisees in breaching the contract and misappropriating Plaintiff's marks, causing Plaintiff to suffer an injury in Florida. (*See, e.g.*, Doc. 130, 94:2–8).

However, Defendant KKI has more attenuated contact with Florida. The only contacts that KKI shares with Florida run through Defendant Farrer; KKI did not do business in Florida nor solicit Florida customers. Yet, this does not end the personal jurisdiction inquiry. The *Calder* "effects" test provides a distinct method of analyzing minimum contacts. *Calder*, 465 U.S. at 790. *Calder* allows for personal jurisdiction over nonresident defendants who commit (1) an intentional tort (2) aimed at the forum state (3) that causes harm in the forum state that was foreseeable. *Lovelady*, 544 F.3d at 1286 (discussing the *Calder* "effects" test). Importantly, "untargeted negligence" is less likely than "intentional, and allegedly tortious, actions" to justify the exercise of personal jurisdiction. *Calder*, 465 U.S. at 789–90.

In *Lovelady*, the Eleventh Circuit found that the defendant had sufficient "minimum contacts" with Florida to satisfy due process where the defendant intentionally misappropriated the plaintiff's trademarks on a "website accessible

in Florida" to benefit the defendant's business. *Id.* at 1288 n.8. "The victim need not travel to the state where the website was created or the infringer resides to obtain relief." *Id.* Like the defendant in *Lovelady*, Defendant KKI allegedly used Plaintiff's registered trademarks intentionally "in order to misappropriate [the] name and reputation [of the marks] for commercial gain." *See Lovelady*, 544 F.3d at 1288. KKI acted solely through Defendant Farrer, who held himself out to be Plaintiff's Director of Operations. (Doc. 131, p. 84:8–14). KKI's employees appeared at customers with Filta-branded uniforms while invoicing for KKI. (Doc. 116, p. 11). Defendant KKI's conduct "was calculated to cause injury to [Plaintiff] in Florida," therefore Defendant KKI "cannot now claim surprise at being haled into court here." *See id.* Because the Non-Franchisees allegedly targeted Plaintiff's marks, customer information, and data in Florida to profit from its intellectual property, Plaintiff sufficiently alleged "something more" than remote trademark infringement, thus establishing an appropriate basis for personal jurisdiction for its claims against the Non-Franchisees.

*ii. Relatedness Prong*

The Relatedness Prong assesses whether a "plaintiff's claim . . . arise[s] out of or relate[s] to at least one of defendant's contacts with the forum." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) (internal quotations omitted). This connection must arise out of contacts the "defendant himself" creates with the state. *Rudzewicz*, 471 U.S. at 475 (emphasis omitted). In general, "unilateral activity of another party or a third person is not an appropriate

consideration." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Here, the analysis is straightforward. The claims against the Franchisees arise out of their deep financial and business connections to Florida. Franchisees frequently traveled to Florida for business training provided by Plaintiff, had deep financial dependence on Plaintiff in Florida, and remained in constant communication with Plaintiff in Florida. Similarly, Defendant Farrer also traveled to Florida for Plaintiff-sponsored conferences, accessed Plaintiff's customer lists and proprietary data in Florida, and conspired with Franchisees to subvert the Agreement at Plaintiff's expense. Defendant KKI's conduct, intentionally misappropriating Plaintiff's marks for financial gain, caused harm to Plaintiff in Florida. Taken together, the claims against Defendants,[10] all stemming from the breach of the Agreement and subsequent misappropriation of Plaintiff's marks, arise out of and relate to the Defendants' contacts with Florida.

*iii. Fair Play Prong*

The final step in the Court's Due Process analysis affords the Defendants an opportunity to "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). In this analysis "we consider these factors:

[10] Plaintiff asserts claims against Defendants for Lanham Act infringements and false designations, common law trademark infringement and unfair competition, breach of contract, tortious interference, and civil conspiracy. (*See generally* Doc. 1).

(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Id.* at 1358 (quoting *Lovelady*, 544 F.3d at 1288).

Here, while the Defendants are all located in Ohio, this case is set for a short bench trial. A voluminous record already exists because of the evidentiary hearing held regarding the Renewed Motion for Preliminary Injunction. Seemingly, the only crucial witnesses in this case are the Defendants themselves. Certainly, while litigating this case in Florida will burden the Defendants more than if the case was heard in Ohio, such difficulty is not so great as to "make litigation so gravely difficult and inconvenient that [the Defendants are] unfairly [] at a severe disadvantage in comparison to [their] opponent[s]. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997) (quotations omitted). "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* at 947. This case does not rise to that level.

Moreover, Florida has a substantial interest in adjudicating this dispute. "A State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Rudzewicz*, 471 U.S. at 473 (1985) (quotations omitted). The harm was exclusively felt in Florida. A Florida contract, governed by Florida law, was subverted by Defendants. Defendants benefitted from the protections of Florida law under the contract. *Id.* ("[W]here individuals 'purposefully derive benefit' from their interstate activities,

it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities[.]”).

Furthermore, there is no significant conflict of laws question in this case. The contract is governed under Florida law and the causes of action arise out of Florida and Federal law. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (“There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.”). [11]

**B. Motion to Transfer Venue**

Defendants also move to transfer venue to the United States District Court for the Southern District of Ohio, Western Division. For the reasons discussed below, that request is denied.

The Court is mindful that cases should be brought and tried in the district “in which a substantial part of the events or omissions giving rise to the claim occurred.” 28 U.S.C. § 1391(b)(2). This is a matter of judicial economy. As a result, § 1404(a) empowers the Court to “transfer any civil action to any other district or division where it might have been brought.” In considering whether to transfer a

[11] The Court notes that Plaintiff also argued, in the alternative, that the Defendants are bound by the Agreement’s forum-selection clause. (Doc. 74, pp. 7–10). Consent may indeed supply an independent basis for personal jurisdiction. Whether a non-signatory may be bound to such a clause is not a question this Court need resolve. Because Florida’s long-arm statute reaches each Defendant and the exercise of personal jurisdiction over each comports with due process, the Court resolves the Motion to Dismiss on those grounds.

case pursuant to § 1404(a), absent consent among the parties, the district court must engage in a two-step inquiry. The court must determine whether the case could have been filed in the proposed district. *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000). Next, the court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Id.* "[U]nder section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). In making this determination, courts consider several factors. These factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight given a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*See Colo. Boxed Beef Co. v. Coggins*, No. 8:07-cv-00223-T-24-MAP, 2007 WL 917302, at *3 (M.D. Fla. Mar. 23, 2007).

### ***1. The Convenience of the Witnesses & Location of Relevant Documents***

The[12] Court determines that the first and second factors weigh in favor of neither party. While a large portion of the witnesses and events occurred in Ohio, much of the harm occurred in Orlando, Florida. Moreover, a large portion of the

[12] The Court also determines that this case could have been brought in the Southern District of Ohio because all Defendants are either domiciled there or are headquartered there.

corporate documents at issue, customer lists, email servers, and other evidence are located in Orlando. While there is certainly a significant amount of evidence located in Ohio, "[m]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof and this factor does not provide an independent basis for transfer." *Watson v. Cmty. Educ. Centers, Inc.*, No. 2:10-CV-00778-36SPC, 2011 WL 3516150, at *5 (M.D. Fla. Aug. 11, 2011). Accordingly, the first and second factors result in a neutral outcome and do not favor transfer.

### *2. The Convenience of the Parties*

Next, each of the Defendants are either domiciled or headquartered in Ohio. Plaintiff is a Delaware corporation with its principal place of business in Orlando, Florida. Of course, any party traveling out of state will suffer some inconvenience. This factor is neutral and does not favor transfer.

### *3. The Locus of Operative Facts*

This factor refers to the specific acts or omissions that gave rise to this case. *Watson*, 2011 WL 3516150, at *5. Here, while the contract originated in Florida and involves harm felt in Florida, a great deal of the breach and misappropriation occurred in Ohio. Accordingly, this factor favors transfer.

### *4. The Ability to Compel Witnesses*

Whether this case is brought in Florida or Ohio, the parties will have the same ability to compel witnesses. *See* FED. R. CIV. P. 45. Thus, this factor is neutral and does not favor transfer.

### *5. The Relative Means of the Parties*

Courts must "consider the relative means—including the financial means—of the parties." *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1213 (N.D. Fla. 2020). "Where a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the Court may also consider the relative means of the parties in determining whether to transfer." *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991). Here, one Defendant has already declared bankruptcy. (*See* Doc. 225). Further, Plaintiff has withheld nearly $500,000 of what is allegedly Defendants' money. (Doc. 132, 228:17–19). Plaintiff is a large franchisor, and Defendants are individuals and smaller corporations. Accordingly, this disparity favors transfer.

#### ***6. The Forum's Familiarity with Governing Law***

While both this Court and the Southern District of Ohio adjudicate Lanham Act claims frequently, this Court has far greater experience adjudicating Florida law claims. Accordingly, this factor weighs against transfer.

#### ***7. Plaintiff's Chosen Forum***

The Franchisees signed a valid contract with Plaintiff, which included a forum selection clause. (Doc. 1-1, p. 40; *see also* Doc. 116). The forum selection clause provided for the following:

> You and the Owners must file any suit against [Plaintiff], and we may file any suit against You and/or the Owners, in the federal or state court where [Plaintiff's] principal office is located at the time the suit is filed. **The parties waive all questions of personal jurisdiction and venue for the purpose of carrying out this provision.**

(Doc. 1-1, p. 40 (emphasis added)).

"Forum selection clauses are presumptively valid." *Loeffelholz v. Ascension Health, Inc.*, 34 F. Supp. 3d 1187, 1189 (M.D. Fla. 2014). The Court will enforce a forum selection clause unless "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.* (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)). It is very likely that the forum selection clause is enforceable. While this does not control the analysis, the "presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 58 (2013). Here, for the Franchisees, this clause is likely controlling. Thus, it is fair to afford weight to the Plaintiff's chosen forum in regard to Franchisees.

Moreover, while the Non-Franchisees were not signatories to the contract and not bound by the forum selection clause, Defendants make no argument, outside of objections to the exercise of personal jurisdiction, as to why Plaintiff's chosen forum should not be given weight. (Doc. 72, p. 23). However, the Court has already determined that personal jurisdiction exists over the Non-Franchisees.

Accordingly, this factor weighs against transfer.

#### ***8. Trial Efficiency and the Totality of the Circumstances***

Ultimately, this Court has already held a multi-day evidentiary hearing in this case. This Court is deeply familiar with the facts, witnesses, and documents at issue. The Defendants remain actively subject to a preliminary injunction issued by this Court. (Doc. 116). To transfer this case to the Southern District of Ohio now, a case that has been ongoing since May of 2025, would create tremendous delay and inefficiency. Accordingly, this factor weighs against transfer.

Thus, considering that the majority of the factors weigh against transfer, the Court will not transfer this case to the Southern District of Ohio

**C. Motion for Summary Judgment**

At this time, the Court concludes that the better course is to proceed to the scheduled bench trial, where the Court, as the trier of fact, may weigh the evidence and draw inferences without the constraints of Federal Rule of Civil Procedure 56. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (District courts may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."). "[T]he availability of summary judgment . . . may turn on whether the application of legal criteria necessarily require judgmental evaluation by the trier of fact, or, to put it another way, whether the trial will require a judge/jury separation of issues." *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123 (5th Cir. 1978).[13] Ultimately, because the inference-

[13] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

drawing and factual determinations are the responsibility of the undersigned, rather than a jury, the Court would prefer to hear the evidence live rather than decide the issues on a cold record without the tools available at trial. Accordingly, the Motion for Summary Judgment is denied without prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, or in the Alternative Transfer Venue (Doc. 72) is **DENIED**; and
2. Plaintiff's Motion for Summary Judgment (Doc. 172) is **DENIED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Orlando, Florida on August 20, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties